UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| HENRY LEE FRAZIER, JR., | No. 1:17-cv-00501-JLT (HC) |
|---|---|
| Petitioner, | **ORDER DISCHARGING ORDER TO SHOW CAUSE DATED MAY 9, 2017** [Doc. 9] |
| v. | **ORDER DIRECTING CLERK OF COURT TO FILE SECOND AMENDED PETITION** [Doc. 12] |
| WARDEN, | **ORDER SUMMARILY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS FOR FAILURE TO STATE A CLAIM** |
| Respondent. | **ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE** |
|  | **ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |

**I.    FEDERAL COURT PROCEDURAL BACKGROUND**

Petitioner filed a petition for writ of habeas corpus on April 5, 2017. (Doc. 1.) He filed a first amended petition on April 20, 2017, along with a consent/decline form indicating he consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 7, 8.)

After conducting a preliminary screening of the petition, it appeared that Petitioner's sentence had been served and the Court was without jurisdiction to entertain the petition.

1

Therefore, on May 9, 2017, the Court issued an order directing Petitioner to show cause why the petition should not be dismissed for lack of jurisdiction. (Doc. 9.) On May 30, 2017, Petitioner responded to the order to show cause and set forth the terms of his sentence which included a probation term of five years imposed on October 28, 2014. (Doc. 10, 11.) As it appears Petitioner is currently serving a probation term, the Court has jurisdiction to consider the petition. Accordingly, the order to show cause will be discharged.

Also on May 30, 2017, Petitioner submitted a Second Amended Petition which has been lodged with the Court. (Doc. 12.) Pursuant to Fed. R. Civ. P. 15(a)(1), a party may amend its pleading once as a matter of course. Further amendments are permitted only with the opposing party's consent or the court's leave. Here, Petitioner has already amended his pleading once; therefore, he may file the Second Amended Petition only with leave of court. Rule 15(a)(2) states that leave should be freely given when justice so requires. In the interest of justice, the Court will order the Second Amended Petition to be filed.

Upon review of the Second Amended Petition, the Court finds that Petitioner fails to present a cognizable claim for relief. For the reasons below, the Court will SUMMARILY DISMISS the petition.

**II.     STATE COURT PROCEDURAL HISTORY**

On December 30, 2010, Petitioner was convicted in the Tuolumne County Superior Court of felony diversion of funds (Cal. Penal Code §484b). (Doc. 11 at p. 2.) On March 9, 2011, he was sentenced to sixty days in jail, five-year's probation, and restitution in the amount of $28,027.42. (Id.) Thereafter, the Office of the California Attorney General filed a motion with the trial court seeking an order revoking Petitioner's contractor's license pursuant to Cal. Bus. & Professions Code section 7106. (Doc. 12, Ex. 8 at p. 12.) Following a hearing on the matter, the trial court ordered the petitioner's license revoked. (Id. at p. 13.) Petitioner then completed his jail term, and his probation was transferred to Alameda County where he resided thereafter. (Doc. 11 at p. 2.)

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On August 6, 2013, the Fifth DCA reversed the judgment as well as the order revoking

Petitioner's contract license. (Doc. 12, Ex. 8.) The matter was "remanded for possible retrial, and rehearing under [California] Business and Professions Code section 7106." (Id. at p. 20.)

On October 25, 2013, the trial court held a hearing after remittitur on appeal. (Doc. 12, Ex. 1.)

Petitioner was retried and found guilty in Tuolumne County Superior Court on September 25, 2014, of diversion of construction funds, a felony, pursuant to Cal. Penal Code § 484b. (Doc. 12, Ex. 3 at p. 2.) On October 28, 2014, he was sentenced to serve sixty days in jail, with credit for time served of thirty actual days. (Doc. 10 at p. 5.) The sentence was suspended and Petitioner was admitted to probation for five years. (Id.) In addition, he was ordered to pay restitution in the amount of $28,072.42. (Id.) Further, it was ordered that his contractor's license be revoked. (Id. at p. 6.)

Petitioner appealed to the Fifth DCA, and the judgment was affirmed on November 28, 2016. (Doc. 12, Ex. 3.) He filed a petition for review in the California Supreme Court, and the petition was denied on February 15, 2017. (Doc. 12, Ex. 5.)

**III.    DISCUSSION**

   A.    Preliminary Review of Petition

Rule 4 of the Rules Governing Section 2254 Cases requires the Court to make a preliminary review of each petition for writ of habeas corpus. The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . ." Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990). The Advisory Committee Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed.

   B.    Failure to State a Cognizable Federal Claim

Petitioner presents six claims for relief: 1) The trial court erred in using an Ex Parte Order to re-open the same issues that were previously resolved by the appellate court; 2) The trial court failed to resolve the four issues identified on appeal in Petitioner's retrial on September 17, 2014; 3) The appellate court erred in stating Petitioner did not file opposition papers; 4) The trial court

3

failed to give unanimity instructions; 5) The trial court erred in failing to give limiting instructions when the petitioner's bank records were introduced before the jury over his objection; and 6) Petitioner's Fifth Amendment rights were violated by being placed twice in jeopardy for the same offense. Upon review of these claims, it is apparent Petitioner fails to state a cognizable federal claim. For the reasons that follow, the Court will dismiss the petition.

1. Order After Remittitur

Petitioner references the appellate court's opinion on the initial appeal wherein the court ordered "[t]he judgment and the order revoking defendant's license are reversed in their entirety." (Doc. 12 at p. 5.) Petitioner complains that the trial court issued an order setting the matter for hearing following remittitur and then held a hearing in which Petitioner was re-charged with Cal. Penal Code section 484b. He was subsequently found guilty in a jury trial. He claims this was in error since the issue of his conviction under 484b had already been settled by the appellate court.

Petitioner apparently misunderstands the appellate process. As Petitioner notes, the appellate court reversed the judgment in its entirety and "remanded [the matter] for possible retrial, . . . ." (Doc. 12, Ex. 8 at p. 20.) Subsequently, the appellate court issued a remittitur which transferred the case back to the trial court. See In re Anna S., 180 Cal.4th 1489, 1500 (2010). The remittitur effectively terminated the appellate court's jurisdiction over the case and revested jurisdiction in the trial court. Snukal v. Flightways Mfg, Inc., 23 Cal.4th 754, 774 (2000). Per California procedure, following issuance of the remittitur, all further proceedings took place in the trial court. Thus, there was nothing improper in the trial court issuing an order to set the matter for hearing following remittitur.

Petitioner complains that he should not have been retried, but his argument is plainly meritless. The appellate court's remittitur specified that the matter was being remanded for possible retrial. Therefore, the trial court acted within the scope of its jurisdiction in conducting a retrial. Petitioner contends that the retrial should have been limited to whether he violated Cal. Bus. & Professions Code section 7106, but this is clearly a misreading of the appellate court's order. The court stated, "The matter is remanded for possible retrial, *and possible rehearing under Business and Professions Code section 7106.*" (Doc. 12, Ex. 8 at p. 20.) The remand

obviously concerned two separate proceedings: 1) a retrial on possible criminal charges including a violation of Cal. Penal Code section 484b; and 2) a rehearing under section 7106 concerning revocation of his contractor's license. Petitioner appears to imply that the language following "rehearing" also applies to the retrial, but this is illogical. First, the revocation of the contractor's license under section 7106 is not a criminal proceeding and does not proceed to a criminal trial. Rather, it involves, as it did in the previous trial court proceedings, a separate hearing following conviction. Second, the appellate court's discussion immediately preceding the order clearly detailed the two separate proceedings and clarified that the remittitur concerned the two distinct proceedings. Indeed, the paragraph before the disposition was titled "The Order Revoking Defendant's Contractors License Must Be Reversed Along With The Conviction." (Id.) Therefore, Petitioner's argument that the appellate court's order barred retrial under section 484b is plainly without merit.

*a. Exhaustion*

In addition, the claim is unexhausted. A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995). A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim. Duncan, 513 U.S. at 365-66. In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275 . . . (1971), we said that exhaustion of state remedies requires that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "opportunity to pass upon and correct alleged violations of the prisoners' federal rights" (some internal quotation marks omitted). If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-366. The Ninth Circuit examined the rule further, stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 . . . (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds. Hiivala v. Wood, 195 F3d 1098, 1106-07 (9th Cir. 1999); Johnson v. Zenon, 88 F.3d 828, 830-31 (9th Cir. 1996); . . . .
>
> In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000), *as amended by* Lyons v. Crawford, 247 F.3d 904, 904-5 (9th Cir. 2001).

The Court has reviewed the petitions for review filed with the California Supreme Court. The instant claim was not presented and is therefore unexhausted and should be dismissed. Rose v. Lundy, 455 U.S. 509, 521-22 (1982). Nevertheless, as discussed above, the claim is plainly without merit. The Court is authorized to deny the claim notwithstanding the failure to exhaust. See 28 U.S.C. § 2254(b)(2).

   *b. State Law Issue*

The basic scope of habeas corpus is prescribed by statute. Title 28 U.S.C. § 2254(a) states:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court *only on the ground that he is in custody in*

6

*violation of the Constitution or laws or treaties of the United States.*

(emphasis added). See also Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

Furthermore, in order to succeed in a petition pursuant to 28 U.S.C. § 2254, Petitioner must demonstrate that the adjudication of his claim in state court

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1),(2).

It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Here, Petitioner challenges the state court's application of state procedural rules. Such a claim does not give rise to a federal question cognizable on federal habeas review. Id.; Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Petitioner does not allege a violation of his constitutional rights or cite any Supreme Court authority for his claim of error. The claim is not cognizable on federal habeas.

2. Errors in Trial

Petitioner next argues that the trial court erred by failing to resolve the issues identified in the appellate court's opinion in the retrial. Again, Petitioner misunderstands the appellate process. The appellate court reversed the judgment and remanded the matter to the trial court for retrial. The appellate court did not remand the matter to address the errors and issues identified in the appeal. After remand, the trial court correctly advised Petitioner as follows: ". . . the same

7

orders that reinstate your contractor's license reversed your conviction. You have no conviction. You are not convicted. You're back here for a new trial on the same charges." (Doc. 12, Ex. 10 at p. 7.) To the extent the same errors may have occurred in the retrial, that is a separate matter which Petitioner could raise on appeal. Regardless, the appellate court did not direct the trial court to address the errors made in the first trial.

In addition, the claim is unexhausted since Petitioner did not submit the claim to the California Supreme Court in his petitions for review. Furthermore, the claim is not cognizable on federal habeas review because Petitioner is challenging only a state procedural issue. Accordingly, the claim must be rejected.

### 3. Appellate Court Error

Petitioner next contends the appellate court erred in stating Petitioner failed to file opposition to the motion to revoke his license filed by the Contractor's State Licensing Board ("CSLB"). (Doc. 12, Ex. 3 at p. 21.) Petitioner states he did file opposition papers and the appellate court referenced those papers in its opinion.

Petitioner's argument is not well-taken. He did in fact file opposition papers to the motion to revoke his license; however, that was in the first hearing conducted after the first trial. (Doc. 12, Ex. 9.) The order granting that motion was vacated along with the reversal of judgment. Petitioner was retried and following conviction, the CSLB filed a new motion to revoke his license. There is no indication he filed an opposition at that time. Therefore, the appellate court correctly stated that Petitioner had failed to file opposition papers with respect to the second motion. The opposition papers filed in the first action had no application in the second action. The appellate court's reversal of the first action terminated the action as though it had not happened. Therefore, the claim is meritless.

In addition, Petitioner did not present the claim in his petitions for review, so it is unexhausted. Moreover, the claim is not cognizable on federal habeas. Petitioner does not allege a violation of his constitutional rights or cite any Supreme Court authority supporting his claim.

### 4. Unanimity Instruction

Petitioner alleges the trial court failed to give a unanimity instruction. Petitioner raised

8

this claim to the appellate court, and it was rejected as follows:

*A. Background*

After the close of evidence, the court discussed jury instructions with the prosecutor and defendant outside the presence of the jury. The court initially framed the discussion as pertaining to which unanimity instruction to give—CALCRIM No. 3500 or 3501—rather than whether to give a unanimity instruction. During the discussion, the court asked the prosecutor what acts he was relying on to support the elements of the diversion charge. The court also said, "The question is, did he willfully fail to apply the money for the purpose by either: One, you have got failing to complete the many improvements for which the funds were provided; Or, willingly failed to provide for services, labor, material, or equipment provided incident to such construction." (See § 484b.) The court's question was clearly directed to the fact that section 484b permits a prosecutor to prove willful failure to apply funds for a proper purpose in one of two ways: "by either willfully failing to complete the improvements for which funds were provided or willfully failing to pay for services, labor, materials, or equipment provided incident to such construction...." (*Ibid*.) The prosecutor observed that "the evidence that the People put forth did not consist of any willfully failing to pay for services, labor, materials, or equipment provided. So, actually I think element B is inapplicable." The prosecutor went on to say that not only was that element inapplicable, "I don't intend to argue it. I intend to argue that the diversion was failing to apply such money by failing to complete the improvement and by listing my evidence there. There has been no evidence provided of any paying of or any failing to pay for any services and labor ... I understand now, Mr. Hansen, in the previous case, got in evidence of the whole brouhaha with Calaveras Lumber and some other issues. This case was tried differently." [FN9] The prosecutor concluded his comment by saying he did not think a unanimity instruction was required.

> [FN9] The Attorney General argues the prosecutor "specifically disclaimed" the theory that defendant was guilty because he had willfully failed to pay for project materials. But that disclaimer was not made in front of the jury.
>
> Defendant observes that during in limine proceedings before trial, the prosecutor said he planned to "duplicate" the first trial and simply add a unanimity instruction. But, as the trial record shows and the prosecutor's posttrial comments reflect, the case was not ultimately tried in the same manner. At the first trial, there had been evidence defendant failed to pay a supplier called Calaveras Lumber. (See *People v. Frazier, supra*, F062053.) The same evidence was not introduced at the second trial at issue here.

After additional discussion, the court observed that "in this case, based on the evidence I have heard, there was no evidence of failing to pay for services, labor, materials, or equipment that was used in this project." The prosecutor said that the theory that defendant violated section 484b by willfully failing to pay for services, labor, materials or equipment was "not applicable" and "should be stricken." The prosecutor suggested that the instruction on the elements of the offense should be modified to exclude any reference to that theory of guilt. The court agreed. Defendant had no objection to the modification of the instruction on the elements of the offense.

9

The court instructed the jury on the elements of the offense as follows:

> "The defendant is charged in Count 1 with a violation of Penal Code Section 484b, namely, diversion of construction funds. In order to find the defendant guilty of this offense, the People must prove that:
>
> "One: The defendant received money for the purpose of obtaining or paying for services, labor, materials, or equipment;
>
> "Two: The defendant willfully failed to apply such money to such purposes by failing to complete the improvements for which the funds were provided;
>
> "Three: The defendant wrongfully diverted the funds to another use;
>
> "And Four: The amount diverted was over $1,000."

The instructions did not include language that the second element could alternatively be established by evidence defendant "willfully fail[ed] to pay for services, labor, materials or equipment provided incident to such construction...." (§ 484b.)

No unanimity instruction was given.

### B. Unanimity

"In a criminal case, the jury must agree unanimously that [the] defendant is guilty of a specific crime. [Citation.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 101.) "In order to '"eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed,"' when the evidence suggests more than one distinct crime either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal conduct. [Citation.]" (*Ibid*.)

### C. Harmlessness

"Where the record provides no rational basis, by way of argument or evidence, for the jury to distinguish between the various acts, and the jury must have believed beyond a reasonable doubt that defendant committed all acts if he committed any, the failure to give a unanimity instruction is harmless. [Citation.] Where the record indicates the jury resolved the basic credibility dispute against the defendant and therefore would have convicted him of any of the various offenses shown by the evidence, the failure to give the unanimity instruction is harmless. [Citation.]" (*People v. Thompson* (1995) 36 Cal.App.4th 843, 853.)

### D. Analysis

We conclude that the absence of a unanimity instruction, even if erroneous, was harmless. Therefore, we do not address whether the court erred.

Defendant argues that while the prosecutor argued defendant "took money from the Johnsons, a single act" the evidence actually established that defendant was paid at several different times. For example, Joel wrote a check to Baywest for $869 on June 27, 2008; another check for $21,378.35 pursuant to the signing of the contract on July 16, 2008; another check for $21,378.35 on August 20, 2008;

> another check for $3,800 on September 24, 2008; and that Joel allowed defendant to use his credit card to spend $3,500 ostensibly on windows. But the fact that each of these payments were made was not in dispute at trial. The jury had no reason to believe some of the payments occurred and others did not. That is, they had no reason to "distinguish between the various acts." (*People v. Thompson, supra*, 36 Cal.App.4th at p. 853.)
>
> Next, defendant argues that "the prosecutor introduced numerous banking records which showed withdrawals payable to several cardrooms and casinos in the Bay Area between April and October of 2008. Evidence of a payment to a Las Vegas Casino in July of 2008 was also introduced." Again, these individual transactions were not in dispute at trial. The jury had no reason to believe some of these transactions occurred and others did not.
>
> Finally, defendant argues that he presented several defenses at trial. The requirement to instruct on unanimity may be triggered by "evidence suggest[ing] more than one distinct *crime*." (*People v. Benavides, supra*, 35 Cal.4th at p. 101, italics added.) However, the requirement to instruct on unanimity is not triggered when the evidence merely suggests more than one defense to a *single* crime.

People v. Frazier, No. F070434, 2016 WL 6944759, at *7–9 (Cal. Ct. App. Nov. 28, 2016).

    a.    *Federal Standard*

Initially, the Court notes that a claim that a jury instruction violated state law is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some [constitutional right].'"). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. See Estelle, 502 U.S. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)); Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988); see, e.g., Middleton v. McNeil, 541 U.S. 433, 434–35 (2004) (per curiam) (no reasonable likelihood that jury misled by single contrary instruction on imperfect self-defense defining "imminent peril" where three other instructions correctly stated the law). Moreover, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

misstatement of the law." Henderson, 431 U.S. at 155.

In addition, a habeas petitioner is not entitled to relief unless the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47 (1998).

b. *Analysis*

The state court reasonably determined that any error was harmless beyond a reasonable doubt. In Petitioner's first trial, the failure to include a unanimity instruction was prejudicial because there were two theories presented under which Petitioner could be found guilty of diversion of construction funds. In the second trial however, the prosecutor did not introduce evidence of the second theory, to wit, that Petitioner had "willingly failed to provide for services, labor, material, or equipment." (Cal. Penal Code § 484b). The prosecutor requested that the second part of the instruction be stricken. Defense counsel did not object and the trial court agreed. Thus, the jury was not instructed on the second theory, so the failure to give a unanimity instruction could not have affected the verdict.

Likewise, there was no prejudice with respect to failure to give a unanimity instruction concerning the several acts of Petitioner taking money from the victims, or of Petitioner making several withdrawals at the cardrooms and casinos. None of these separate transactions were in dispute. The jury had no reason to believe some occurred while others did not. Thus, the state court reasonably found any error to be harmless.

Finally, as to the argument that Petitioner presented several defenses, the state court determined that under California law, unanimity instructions are required when the evidence suggests more than one distinct crime, not more than one defense. The federal court is bound by the state court interpretation and application of state law. Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009).

As noted above, the claim is one of state law and is not cognizable on federal habeas review. Estelle, 502 U.S. at 71-72. Petitioner fails to show that the instructional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637. The claim must be denied.

5. Limiting Instructions

Petitioner claims the state court erred in failing to give limiting instructions sua sponte when the prosecution sought to introduce his bank records. He complains that the court failed to delineate the proper purposes for which the records could be used.

Petitioner also presented this claim to the state courts, and it was rejected by the Fifth DCA as follows:

*A. Background*

In the trial court, the prosecutor sought to admit the bank records on the issue of motive. Defendant responded:

"I would object to that. The matter is about, basically, a project that went bad. That project began on—7–16, in the middle of the month of July, where we first received the first monies for this project. Anything previous to that time and date should not be allowed in this court, should not have been mentioned before any jury, because what it does, it poisons the case and it puts the defendant in an unfair disadvantage."

The court admitted the bank records over defendant's objection.

The court did not instruct the jury with CALCRIM No. 303 which provides: "During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." (CALCRIM No. 303.) Nor did the court instruct the jury with any other limiting instruction applicable to the bank records.

*B. Analysis*

Defendant concedes he "never made a specific request for an instruction limiting the use of the banking records...." However, he argues that such a request "may be reasonably inferred from the objections to the evidence." We disagree. Defendant was clearly objecting to the evidence as altogether inadmissible. That is not the same as requesting a limiting instruction concerning admissible evidence.

Defendant also argues that even though he failed to request a limiting instruction, the court has a sua sponte duty to ensure the jury was properly instructed. We disagree. """[E]ven in the absence of a request, a trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence...."" (*People v. Barajas* (2004) 120 Cal.App.4th 787, 791.) However, the court """need not instruct on specific points developed at trial""" absent a request. (*Ibid*.) We agree with *People v. Simms* (1970) 10

13

Cal.App.3d 299, which held:

> "Although in criminal cases the court has the duty of giving on its own motion, instructions on the pertinent general principles of law commonly or closely and openly connected with the facts of the case before the court [citations], there is no duty, in the absence of a request, to give an instruction limiting the purpose for which evidence may be considered. [Citations.]" (*Id.* at p. 311.)

Consequently, we reject defendant's claim. Because we find no error, we do not address the issue of prejudice.

Frazier, 2016 WL 6944759, at *6–7.

Petitioner fails to state a cognizable federal claim. There is no federal relief for a jury instruction violating state law. Estelle, 502 U.S. at 71-72. Here, the state court determined that the omission of a limiting instruction, in the absence of a request, was proper under California law. This Court is bound by the state court's interpretation of state law. Petitioner does not allege that the failure to instruct violated his constitutional rights, and he fails to cite any Supreme Court authority in support of his arguments.

Moreover, with respect to the admission of the bank records, there is no Supreme Court precedent governing a court's discretionary decision to admit evidence as a violation of due process. In Holley v. Yarborough, the Ninth Circuit stated:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, [Citation omitted.], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot conclude that the state court's ruling was an "unreasonable application." [Citation omitted.] Under the strict standards of AEDPA, we are therefore without power to issue the writ . . . .

Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see Moses v. Payne, 555 F.3d 742, 760 (9th Cir. 2008) (holding that trial court did not abuse its discretion in excluding expert testimony "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating discretionary decisions to exclude the kind of evidence at issue here"). Since there is no clearly established Supreme Court precedent governing a trial court's discretionary decision to admit evidence as a violation of due process, habeas relief is foreclosed. Id.

6. Double Jeopardy

Petitioner claims that his Fifth Amendment rights were violated when he was retried for the same offense.

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." Burks v. United States, 437 U.S. 1, 11 (1978). However, there is a critical difference "between reversals due to trial error and those resulting from evidentiary insufficiency." Id. at 15. It is a long "settled rule that the double jeopardy clause does not prohibit retrial after a reversal premised on error of law." People v. Garcia, 36 Cal.3d 539, 558, fn. 13 (1984); see also Monge v. California, 524 U.S. 721, 735-36 (1998) (Stevens, J., dissenting). In this case, the appellate court reversed the judgment based on legal errors, not for evidentiary insufficiency. Therefore, double jeopardy principles were not implicated in a retrial.

## IV.    CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a)    In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)    There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Thus, the Court **DECLINES** to issue a certificate of appealability.

## V.     ORDER

Accordingly, the Court **ORDERS**:

1) The Order to Show Cause dated May 9, 2017, [Doc. 9], is DISCHARGED;
2) The Clerk of Court is DIRECTED to file the Second Amended Petition [Doc. 12];
3) The Second Amended Petition is SUMMARILY DISMISSED WITH PREJUDICE;
4) The Clerk of Court is DIRECTED to enter judgment and close the case; and
5) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **June 12, 2017**                       **/s/ Jennifer L. Thurston**
                                                 UNITED STATES MAGISTRATE JUDGE